UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE No. 1:25-cv-22838-EA

MIAMI FOURTH ESTATE, INC.,

    Plaintiff,

v.

VILLAGE OF KEY BISCAYNE, and
STEVEN WILLIAMSON, Village Manager,
in his official

    Defendants.
_____/

**<u>DEFENDANT, VILLAGE OF KEY BISCAYNE'S</u>**
**<u>RESPONSE BRIEF REGARDING SUBJECT MATTER JURISDICTION</u>**

**TABLE OF CONTENTS**

OVERVIEW ……………………………………………………………………………...5

FACTUAL AND PROCEDURAL BACKGROUND ……………………………………...5

ARGUMENT ……………………………………………………………………………..8

    I.    PLAINTIFF'S CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF ARE MOOT ………………………………………………………………………….8

    II.    DISCOVERY IS MERITED ON THE ISSUE OF PLAINTIFF'S STANDING TO MOVE FORWARD WITH ITS NOMINAL DAMAGES CLAIM …………………….12

## TABLE OF CASES

*Am. C.L. of Fla., Inc. v. City of Sarasota*,
    859 F.3d 1337 (11th Cir. 2017) …………………………………………………………………13

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*,
    115 F.4th 1266 (11th Cir. 2024) ………………………..…..………………………..8, 9, 10

*Cao v. Sessions*,
    18-CIV-10014, 2018 WL 11447697 (S.D. Fla. May 9, 2018) …………………………………8

*Coral Springs St. Sys., Inc. v. City of Sunrise,*
    371 F.3d 1320 (11th Cir. 2004) ……………………………………………………….........10

*Cotterall v. Paul*,
    755 F.2d 777 (11th Cir. 1985) ………………………………………..…....……………9

*Ethredge v. Hail*,
    996 F.2d 1173 (11th Cir. 1993) ……………………………………………....…………….8

*Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*,
    225 F.3d 1208 (11th Cir. 2000)…………………………………………..…………...…...8

*Flast v. Cohen*,
    392 U.S. 83 (1968) ……………………………………………………………………….8

*Hall v. Beals*,
    396 U.S. 45 (1969) ……………………………………………..…………..………..8

*Keohane v. Fla. Dep't of Correc. Sec.*,
    952 F.3d 1257 (11th Cir. 2020) ……………………………………………………..……9, 10

*Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*,
    633 F.3d 1297 (11th Cir. 2011) ……………………………………………………………….8

*Nat'l Advert. Co. v. City of Miami*,
    402 F.3d 1329 (11th Cir. 2005) ……………………………………………………………19

*Pittman v. Cole*,
    267 F.3d 1269 (11th Cir. 2001) ………………………………………………………………12

*Powell v. McCormack*,
    395 U.S. 486 (1969) …………………………………………..………………………………8

*Preiser v. Newkirk*,
    422 U.S. 395 (1975)…..………………………………………………………..……….8

*Saladin v. Milledgeville*,
   812 F.2d 687 (11th Cir. 1987) …………………………………………….………………….8

*Sheely v. MRI Radiology Network, P.A.*,
   505 F.3d 1173 (11th Cir. 2007) ……………………………………………………...…….10

*Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*,
   382 F.3d 1276 (11th Cir. 2004) ……………………………………………...………………9

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953) …………..……………………………….……………………9

Defendant, Village of Key Biscayne ("Village"), file its response to Plaintiff, Miami Fourth Estate, Inc.'s ("Plaintiff") Brief in Support of Subject Matter Jurisdiction ("Brief") [ECF No. 33], and states:

**OVERVIEW**

Plaintiff seeks declaratory and injunctive relief as well as nominal damages and attorneys' fees over a media relations policy ("Media Relations Policy") that has been unambiguously rescinded, and no reasonable basis to believe the policy will be reinstated exists. Accordingly, Plaintiff's claims for declaratory and injunctive relief are moot. And while the Village does not dispute that Plaintiff has at least *pled* in its Amended Complaint [ECF No. 22] the necessary elements and supporting allegations to state a right to receive information claim under the First Amendment, the Village submits that discovery is needed on Plaintiff's ability to *prove* standing. Indeed, Plaintiff's lack of standing is one of the Village's affirmative defenses, and the Village disputes a willing speaker within the Village existed when the Media Relations Policy was in place. Finally, the Village does not dispute that the recission of the Media Relations Policy does not moot Plaintiff's nominal damages and attorney's fees claim for the brief period in which the policy was in place as alleged, but disputes that Plaintiff can ultimately prove a First Amendment violation or that any nominal damage occurred, as Plaintiff lacked a willing speaker in the Village when the challenged policy was in place.

**FACTUAL AND PROCEDURAL BACKGROUND**

Under the Village Charter, the Village Manager is responsible for the direction and supervision of Village employees, and the Village Council deals with Village staff solely through the Manager. *See* Village Charter, §§ 3.03(1), (2), 4.02(b), Ex. A. "[N]either the Council nor its members shall give orders to any [Village] officer employee, either publicly or privately." Village

5

Charter, § 4.02(b), Ex. A. It is, therefore, solely within the province of the Village Manager's authority to enact personnel policies for Village staff, not the Village Council. *Id.* The Village Manager is also required to ensure the acts of the Council, such as resolutions, are faithfully executed. Village Charter, § 3.03(4), Ex. A.

To ensure the accurate and timely dissemination of Village information, the Village Manager, Steve Williamson, enacted the Media Relations Policy on November 26, 2024. *See* Media Policy, ECF No. 36-1. Notably, prior to the enactment and recission of the Media Relations Policy, the Village Council had never opined on whether the Village should have a media relations policy. Declaration of Steve Williamson, Ex. B. The policy was developed to manage media interactions following high profile events that took place within the Village. Declaration of Steve Williamson, Ex. B. The Media Relations Policy was specifically developed to address all media relationships. Declaration of Steve Williamson, Ex. B.

Not until May 23, 2025, did Plaintiffs – through counsel – contact the Village via email to challenge the policy. *See* Declaration of Steve Williamson, Ex. B. Despite on-going negotiations to revise the policy in a manner acceptable to Plaintiff, it instead filed suit on June 24, 2025. ECF No. 1. Following service of the original pleading on the Village, the Village Manager suspended the Media Relations Policy, explaining the suspension was "in the best interest of our taxpayers." July 23, 2024 Suspension Email, ECF No. 36-10. Mr. Williamson further explained,

> We have on several occasions communicated to the *Key Biscayne Independent* our willingness to work with them to revise the policy to ensure it clearly states that it does not restrict any employees' rights (of course, its intent was never to do so) and that it upholds the First Amendment rights of our residents and the press.

July 23, 2024 Suspension Email, ECF No. 36-10.

Following the suspension, the Village Manager engaged in substantial deliberation regarding the merits of the Media Relations Policy moving forward, which included hours of

WEISS SEROTA HELFMAN COLE & BIERMAN, P.L.

analysis with staff, including the Village Attorney. Declaration of Steve Williamson, Ex. B. On September 29, 2025, the Village Council held an executive session regarding this matter and the Media Relations Policy, pursuant to Section 286.011(8), Fla. Stat. *See* Public Notice, Ex. C. Counsel for the Village and Mr. Williamson were in attendance.[1] *Id.* Ultimately, as a result of the substantial deliberation, the Village Manager rescinded the previously-suspended Media Relations Policy on October 8, 2025. Recission Notice, Ex. D. The Village Manager expressly has no intention of reenacting the challenged Media Relations Policy or enacting any other policies, binding or otherwise, regarding staff communications with the media.. Declaration, Ex. B.

Finally, on November 18, 2025, the Village Council passed Resolution 2025-54, ratifying the Village Manager's decision to rescind the Media Relations Policy. *See* Ex. E. This resolution is the first time the Village Council has spoken regarding any media policy. Declaration, Ex. B. In it, the Village Council expressly stated that it "supports the Manager's decision to rescind the [Media Relations P]olicy and expresse[d] its intent not to have a binding media policy." Resolution 2025-54, Ex. E. The Village Council could not rescind the Media Relations Policy via resolution or ordinance because, pursuant to the Village Charter, direction and supervision of staff is within the purview of the Village Manager. Village Charter, §§ 3.03, 4.02, Ex. A.  Moreover, as a practical matter, at the time of the Resolution's passage, the Manager had already formally rescinded the Media Relations Policy. Accordingly, the Village no longer has any media relations policies, and it was the express intent of the Village Council that no such policy exists. Ex. E.

---

[1] The transcript of said meeting does not become public until the conclusion of the litigation. § 286.011(8)(e), Fla. Stat.

**ARGUMENT**

**I.     PLAINTIFF'S CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF ARE MOOT.**

"A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1216–17 (11th Cir. 2000) (internal quotation marks omitted) (citing *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993)); *see also Flast v. Cohen*, 392 U.S. 83, 95 (1968) ("Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented."); *Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987) ("A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome of the litigation, such as where . . . interim relief or events have eradicated the effects of the alleged violation."); *Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."). When actions occur subsequent to the filing of a complaint or motion whereby the plaintiff obtains the requested relief, then the issue is moot and should be dismissed or denied. *See, e.g.*, *Hall v. Beals*, 396 U.S. 45, 48 (1969). "In fact, dismissal is required because mootness is jurisdictional." *Cao v. Sessions*, 18-CIV-10014, 2018 WL 11447697 (S.D. Fla. May 9, 2018).

Here, Plaintiff demands declaratory and injunctive relief. *See* ECF No. 22. "'The purpose of an injunction is to prevent future violations,' so for a claim for injunctive relief to remain a live controversy there must 'exist[ ] some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1283 (11th Cir. 2024), *cert. denied sub nom. Cambridge Christian Sch., Inc. v. FL High Sch. Athletic Ass'n*, No. 24-1261, 2025 WL 3198583

(U.S. Nov. 17, 2025) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, (1953)); *see also Cotterall v. Paul*, 755 F.2d 777 (11th Cir. 1985) ("Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury.") (quotation marks omitted). "Similarly, a claim for declaratory relief becomes moot when there is no longer aa substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality to warrant the issuance of a declaratory judgment*.'" *Cambridge Christian Sch.,* 115 F.4th at 1283 (quoting *Preiser*, 422 U.S. at 402) (emphasis in original).

Notably absent from Plaintiff's Brief is an accurate recitation of the mootness standard when dealing with a government defendant. *See* ECF No. 33. Specifically, although standard for mootness following a defendant's voluntary cessation of challenged conduct is "stringent," "[a] government defendant can often meet that burden by formally rescinding a challenged policy." *Cambridge Christian Sch.,* 115 F.4th at 1283 (citing *Keohane v. Fla. Dep't of Correc. Sec.*, 952 F.3d 1257, 1267–68 (11th Cir. 2020) (adding that "the repeal of a challenged statute — or other similar pronouncement" ordinarily makes it clear that the challenged behavior cannot reasonably be expected to recur) (quotation marks omitted). Indeed, "when the defendant is not a private citizen but a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1283 (11th Cir. 2004) (emphasis in original). "That's because government defendants are 'more likely than private defendants to honor a professed commitment to changed ways.'" *Cambridge Christian Sch.,* 115 F.4th at 1283 (quoting *Keohane*, 952 F.3d at 1267-68); *see Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011) ("Hence, the Supreme Court has held almost uniformly that voluntary cessation by a government defendant

9

moots the claim.") (quotation marks omitted); *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (explaining that "government actors receive the benefit of a rebuttable presumption that the offending behavior will not recur"); *Coral Springs St. Sys., Inc. v. City of Sunrise,* 371 F.3d 1320, 1328–29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities."); 13A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3533.7 (2d ed. 2004) ("Courts are more apt to trust public officials than private defendants to desist from future violations.").

"Once a government defendant has repealed a challenged policy, the burden shifts to the plaintiff to present evidence that its challenge has not been mooted by that repeal." *Cambridge Christian Sch.,* 115 F.4th at 1284 (citing *Keohane*, 952 F.3d at 1268). "To do so the plaintiff must show a 'reasonable expectation" (or 'substantial likelihood') that the government defendant will 'reverse course' and reinstate the repealed policy if the lawsuit is terminated." *Cambridge Christian Sch.,* 115 F.4th at 1284. "Mere speculation that [a defendant] may return to its previous ways is no substitute for concrete evidence . . . ." *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005) (noting cases are "legion" "where the repeal of an allegedly unconstitutional statute was sufficient to moot litigation challenging the statute").

Here, Plaintiff has not and cannot show a reasonable expectation or substantial likelihood that the Village will "reverse course" and reinstate the Media Relations Policy. On the contrary, the evidence reflects that the October 8, 2025 rescission of the Media Relations Policy was unambiguous and unequivocal. *See* Ex. D. It is the Village Manager's role to direct Village staff and create personnel policy. Village Charter, §§ 3.03, 4.02, Ex. A. As such – and contrary to Plaintiff's unsupported argument – the Village Council is not permitted to direct Village staff

under the Charter and, therefore, it *cannot* rescind the Media Relations Policy via resolution or ordinance. Accordingly, any argument that the policy's recission should have been rescinded via ordinance is prohibited by the Village Charter. The Village Manager, moreover, has now expressly stated his intent on the record *not* to have a media relations policy for Village employees moving forward. Declaration, Ex. B.

Additionally, the Village Council has also unequivocally ratified the Village Manager's intent not to have a binding media relations policy for the Village via Resolution 2025-54, Ex. E. The Village Manager's recission was similarly one resulting from substantive deliberation with the Village Attorney (and the support of the Village Council).[2] Declaration, Ex. B; Resolution 2025-54, Ex. E. Accordingly, contrary to Plaintiff's unsupported speculation that the October 8 recission "could just as easily be reversed at the drop of a hat" [ECF No. 33, at 17], the evidence and binding Charter provisions prove otherwise. Resolution 2025-54 was also the first time the Village Council has opined on issues of media policies, ratifying the Village Manager's rescission. A subsequent enactment of a media policy would be in contravention of the act of Village Council, namely, Council's stated ratification in Resolution 2025-54 of the Village Manager's election not to have a media policy moving forward. *See* Village Charter, § 3.03(1), Ex. A. Once again, Mr. Williamson, moreover, has no intention of enacting any media relations policies, binding or voluntary.

---

[2] Although Plaintiff will no doubt take issue with the fact that some of the deliberations took place in a private, executive session, the law permits the Village to do so, as the deliberations included attorney-client discussions as a result of the on-going litigation. *See* § 286.011(8), Fla. Stat. These deliberations, moreover, will be come public upon the conclusion of the litigation. § 286.011(8)(e), Fla. Stat.

11

Finally, Plaintiff cannot meet its burden to show that the Village has not consistently applied its new course of conduct. There is "no replacement policy," because the Village Manager and the Village Council have expressly stated the intent not to have one.[3] Declaration, Ex. B; Resolution 2025-54, Ex. E. The Village Manager has previously reiterated the Village's intent to uphold the First Amendment rights of staff, residents, and press. *See* ECF No. 36-10. Plaintiff offers no evidence that the challenged Media Relations Policy is in any way in effect, and Plaintiff wholly overlooks the possibility that employees simply do not want to talk to its reporters. to them. The Village no longer has any media relations policies, and it is the express intent of the Village Council that no such policy exists. Ex. E. Accordingly, Plaintiff has not met its burden to show any reasonable expectation that the challenged policy would be reenacted, and Plaintiff's declaratory and injunctive relief claims are moot, meriting dismissal with prejudice.[4]

## II. DISCOVERY IS MERITED ON THE ISSUE OF PLAINTIFF'S STANDING TO MOVE FORWARD WITH ITS NOMINAL DAMAGES CLAIM.

At this early stage, the Village does not dispute that Plaintiff has at least *alleged* sufficient facts in the Amended Complaint to establish standing for a "right to receive information" First Amendment claim. *See Pittman v. Cole*, 267 F.3d 1269, 1283 n.12 (11th Cir. 2001) (acknowledging that a willing speaker is required to confer standing on a right to receive speech claim). However, the Village disputes that there was, in fact, a speaker willing to speak to Plaintiff during the few months that the Media Relations Policy was in place. Plaintiff's claims that any

---

[3] The entire crux of Plaintiff's case is to invalidate the Village's Media Relations Policy. However, instead of being satisfied that the Village has now simply eliminated the policy, Plaintiff is perplexingly asserting that its claims for declaratory and injunctive relief are somehow not moot because a replacement policy has not been enacted.

[4] The Village agrees that Plaintiff's nominal damages claim is not mooted the recission of the Media Relations Policy, but disputes that Plaintiff has, in fact, suffered any nominal damages. Plaintiff must first also prove that the challenged Media Relations Policy actually violated the First Amendment, which it has not done.

such speaker existed during that time are based on conjecture. *See* ECF Nos. 34, 35. Accordingly, the Village concurs that jurisdictional discovery is needed. *See Am. C.L. of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337 (11th Cir. 2017).

WHEREFORE, Defendant, Village of Key Biscayne, respectfully requests that this Court dismiss Plaintiff's claims for declaratory and injunctive relief with prejudice as moot, permit jurisdictional discovery, and award it such other relief as this Court deems just and proper.

DATED:    December 9, 2025                Respectfully submitted,

/s/  Anne R. Flanigan
Matthew H. Mandel (FBN 147303)
mmandel@wsh-law.com
lbrewley@wsh-law.com
Anne R. Flanigan (FBN 113889)
aflanigan@wsh-law.com
pgrotto@wsh-law.com
WEISS SEROTA HELFMAN
COLE & BIERMAN, P.L.
200 East Broward Blvd., Suite 1900
Fort Lauderdale, FL  33301
Telephone: 954-763-4242 | Fax: 954-764-7770

*Counsel for Defendant, Village of Key Biscayne*