UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

MIAMI FOURTH ESTATE, INC.

      *Plaintiff*,

  v.

VILLAGE OF KEY BISCAYNE,

      *Defendant*.

CASE NO. 1:25-cv-22838-EA

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF SUBJECT MATTER JURISDICTION**

Rachel E. Fugate
Florida Bar No. 144029
rfugate@shullmanfugate.com
SHULLMAN FUGATE PLLC
100 South Ashley Drive, Suite 600
Tampa, FL 33602
(813) 935-5098

Grayson Clary*
gclary@rcfp.org
Renee M. Griffin*
rgriffin@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
(202) 795-9300
 *Admitted *pro hac vice*

*Counsel for Plaintiff Miami Fourth Estate, Inc.*

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

CONCLUSION ............................................................................................................................... 8

**TABLE OF AUTHORITIES**

*Cambridge Christian Sch. Inc. v. Fla. High School Athletic Assoc.*,
 115 F.4th 1266 (11th Cir. 2024) .................................................................................. 3, 4, 6, 7

*Doe v. Wooten*,
 747 F.3d 1317 (11th Cir. 2014) ...................................................................................... 1, 3, 4, 7

*Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*,
 868 F.3d 1248 (11th Cir. 2017) ........................................................................................ *passim*

*Harrell v. Fla. Bar*,
 608 F.3d 1241 (11th Cir. 2010) ........................................................................................ *passim*

*Keohane v. Fla. Dep't of Corr. Sec'y*,
 952 F.3d 1257 (11th Cir. 2020) ................................................................................................ 6

*Roberts v. Sec'y, Dep't of Corr.*,
 No. 23-12289, 2024 WL 1830713 (11th Cir. Apr. 26, 2024) ................................................ 3, 9

*Rodda v. Univ. of Miami*,
 542 F. Supp. 3d 1289 (S.D. Fla. 2021) ..................................................................................... 9

*Speech First, Inc. v. Schlissel*,
 939 F.3d 756 (6th Cir. 2019) ..................................................................................................... 7

*State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B&A Diagnostic, Inc.*,
 145 F. Supp. 3d 1154 (S.D. Fla. 2015) ..................................................................................... 8

*Walker v. City of Calhoun*,
 901 F.3d 1245 (11th Cir. 2018) ........................................................................................ *passim*

**SUMMARY OF ARGUMENT**

Defendant agrees that Plaintiff has shown standing and stated a First Amendment claim at this stage of the litigation, and concedes that at least jurisdictional discovery is necessary as to the damages claim. *See* ECF No. 39 ("Resp. Br.") at 12–13. Accordingly, Plaintiff requests that the Court order a scheduling conference so that the case may proceed.

The only disputed question, then, is whether Plaintiff's prayers for declarative and injunctive relief remain live. They do: The Village has failed to "establish[] unambiguous termination of the challenged conduct," *Doe v. Wooten*, 747 F.3d 1317, 1322 (11th Cir. 2014), and regardless, Plaintiff has shown a "reasonable basis to believe that the [Gag Policy] will be reinstated if the suit is terminated," *id.* (citation omitted). On each front, the record makes clear that the Gag Policy's rescission was an attempt to avoid jurisdiction and that the Village Manager retains the power to reinstate the policy at whim. Even now, the Village has not offered "any reasoned basis for the voluntary cessation," *id.* at 1325, submitting instead a declaration that parrots the legal standard without introducing any facts, *see* ECF No. 39-2 ("Williamson Decl.") ¶ 8. And the Village itself represents (inconsistently) that the Resolution had no legal effect and cannot bind the Manager's discretion to reissue the policy. *See* Resp. Br. at 10–11; *cf. Walker v. City of Calhoun*, 901 F.3d 1245, 1271 (11th Cir. 2018) (termination not unambiguous where "the City did not change its [] policy through a legislative act" and "a single judge" retained power to reissue it). In each respect, the Village's "voluntary cessation of allegedly illegal conduct does not deprive" this Court of jurisdiction. *See Harrell v. Fla. Bar*, 608 F.3d 1241, 1265–66 (11th Cir. 2010). But at a minimum, it would be premature to dismiss any of Plaintiff's prayers for relief when the same discovery the Village agrees is necessary to resolve Plaintiff's damages claim

would also bear on the mootness inquiry for prospective relief. *See Walker*, 901 F.3d at 1271 (relying on government defendant's "response to interrogatories" about the process for adopting a policy in evaluating mootness). Plaintiff thus requests that this Court proceed with a scheduling conference to set discovery deadlines for the case as a whole.

## ARGUMENT

As all parties agree, the Key Biscayne Independent has standing to assert that the Gag Policy violated its First Amendment "right to receive speech from a willing speaker," *Pittman*, 267 F.3d at 1283 n.12, and the facts as alleged state a cognizable claim.[1] Declaratory and injunctive relief are still meaningful methods of redressing that injury because nothing in the record establishes a "permanent and complete" end to the Gag Policy, *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 868 F.3d 1248, 1257 (11th Cir. 2017) (en banc), and Plaintiff has shown reason to believe that the Village might well re-enact the policy if this litigation ended today.

In arguing otherwise, the Village misunderstands the order of operations in the mootness inquiry. While true that government defendants generally receive "more leeway than private parties in the presumption that they are unlikely to resume illegal activities," *id.*, that leeway does not save the Village. "[T]he government is—and always has been—required to justify application of the presumption before benefiting from it" by demonstrating that they have, in fact, unambiguously ended the challenged conduct. *Doe*, 747 F.3d at 1323; *accord Roberts v. Sec'y, Dep't of Corr.*, No. 23-12289, 2024 WL 1830713, at *4 (11th Cir. Apr. 26, 2024). As explained

---

[1] Of course, the Court has an independent obligation to assure itself of jurisdiction, but the facts alleged in the First Amended Complaint, ECF No. 22, and sworn to in the Winton Declaration, ECF No. 34, and Pacenti Declaration, ECF No. 35, more than demonstrate standing here for the reasons given in Plaintiff's opening brief, *see* ECF No. 33 ("Pl.'s Br.") at 4, 11–14.

in Plaintiff's opening brief, the Village has not met that "formidable burden," Pl.'s Br. at 17 (quoting *Doe*, 747 F.3d at 1322). But even if it did and the burden shifted, Plaintiff has shown ample evidence that the voluntary cessation exception to mootness applies here. All agree that the key question is whether Plaintiff has "some reasonable basis to believe," *Doe*, 747 F.3d at 1323, or a "reasonable expectation," *Cambridge Christian Sch. v. Fla. High School Athletic Assoc.*, 115 F.4th 1266, 1284 (11th Cir. 2024), that the Village "will 'reverse course' and reinstate the repealed policy if the lawsuit is terminated," *id.* That inquiry does not require Plaintiff to prove that the Village is more likely than not to reverse its rescission. Rather, it is enough to show that some realistic risk of reinstitution remains. *See Walker*, 901 F.3d at 1271 (case not moot where it was possible, if "perhaps unlikely," that single government decisionmaker could reinstate policy); *Harrell*, 608 F.3d at 1267 (case not moot where, even though the court was "generally disposed to credit" the government defendant's explanation, the record did not "yield[] absolute certainty").

The three factors courts consider to answer both questions—whether a government actor has earned the presumption and whether a plaintiff has rebutted it—are "(1) whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate our jurisdiction; (2) whether the decision to end the challenged conduct was unambiguous and can be fairly viewed as being permanent and complete; and (3) whether the government has consistently maintained its commitment to the new policy." *Cambridge Christian Sch.*, at 1284–85 (cleaned up); *see also Doe*, 747 F.3d at 1323. These factors make clear that the Policy has not been unambiguously terminated and support Plaintiff's reasonable belief that the Village will re-enact the Gag Policy upon termination of the litigation.

3

First, in asserting that the rescission was "unambiguous and unequivocal," Resp. Br. at 10, the Village makes a string of ambiguous and equivocal representations about the effect of the Manager's October 8 Memo and the Council's Resolution. For instance, the Village claims both that (i) the Village Council has no authority to "direct Village staff" and "*cannot* rescind the Media Relations Policy," Resp. Br. at 10–11, and (ii) any future "enactment of a media policy [by the Manager] would be in contravention of" the Council's Resolution, *id.* at 11. The former statement suggests that the Council is powerless to prevent a future re-enactment of the Gag Policy by the Village Manager; the latter statement suggests that the Council already did so via the Resolution. Those representations are incompatible. Either the Council can control the Manager's actions with respect to the Gag Policy, or it cannot. If it can, then surely the Council could have expressly prohibited the Manager from re-enacting the Gag Policy. It chose not to do so in the Resolution, opting for a noncommittal "intent to not have a binding media policy" instead of an ordinance with the force of law, ECF No. 39-5, thereby "fairly leav[ing] open the possibility" that the Village intended to leave room to reverse course, *Harrell*, 608 F.3d at 1267. If on the other hand the Council truly can do nothing to constrain the Manager, then a permanent injunction from this Court is all the more necessary. *See Walker*, 901 F.3d at 1273. The Village's actions therefore do not demonstrate a "permanent and complete" rescission of the Gag Policy. *Flanigan's*, 868 F.3d at 1256.

Indeed, the fact that the Village Manager retains the sole power to reinstate a gag policy distinguishes this case from those that apply the rebuttable presumption that a government defendant will not renege. The Eleventh Circuit has emphasized that the defendant's cessation must be comparable to "the repeal of a challenged statute," *Keohane v. Fla. Dep't of Corr. Sec'y*,

4

952 F.3d 1257, 1268 (11th Cir. 2020), such that the government "would have to do some serious hoop-jumping" to reinstate the policy if it wanted to, *id.* at 1269.  In *Cambridge Christian School*, for instance, claims for prospective relief were mooted because of a new statute passed by the Florida legislature and policy changes undertaken by the Florida High School Athletic Association that were necessary "to comply with the newly enacted state statute."  115 F.4th at 1285–86.  In *Keohane*, the policy change was implemented by the Florida Department of Corrections, which showed that a "protracted administrative process" would have been required to reverse course.  *Keohane*, 952 F.3d at 1269.  In *Flanigan's*, a city council had to vote to repeal the challenged ordinance and did so in two public sessions.  868 F.3d at 1260.  Here, in contrast, the Gag Policy was rescinded by a one-sentence memo from the Manager and could be reinstated with a one-sentence memo from the Manager.  That difference matters.  *See id.* at 1257 (noting that courts must examine "the procedures used in enacting" a rescission).  Where the power to change the status quo lies with one individual, rather than some larger legislative body or formal rulemaking process, a statement that the individual has "no intention of reenacting the challenged" policy at a given moment, Williamson Decl. ¶ 12, is very far from a guarantee.  *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019) (emphasizing that courts are reluctant to find mootness "[i]f the discretion to effect the change lies with one agency or individual, or there are no formal process required to effect the change," and collecting cases).

Moreover, evidence not countered by the Village shows that the rescission was "merely an attempt to manipulate [] jurisdiction" rather than the result of "substantial deliberation," *Cambridge Christian Sch.,* 115 F.4th at 1284.  The first piece of evidence is the timing of the Village's actions.  The Manager waited until shortly "after this litigation had commenced,"

5

*Harrell*, 608 F.3d at 1267, to suspend the policy in July 2025, and said he was doing so as a direct result of the lawsuit. *See* Winton Decl., Ex. 10 (July 23, 2025 Email from S. Williamson). The Manager then issued his October 8 Memo formally rescinding the policy months later—but shortly after this Court's September 23 order requiring briefing on standing and mootness issues, ECF No. 26. Similarly, the Council did not schedule a vote on its Resolution until *after* that order was issued. *See* ECF No. 29 (Joint Motion to Stay) (noting that on October 1, 2025, Village counsel informed Plaintiff's counsel of vote to be held on October 14, 2025). "This timing suggests a change was made simply to deprive the District Court of jurisdiction," *Doe*, 747 F.3d at 1325, immediately after the Court sought briefing on that precise issue.

Second, any "deliberation" about whether to rescind the policy and why occurred—if at all—behind closed doors at an "executive session" with the Council, Resp. Br. at 7, and in private conversations between the Manager and staff, Williamson Decl. ¶ 8. Where a government defendant "acted in secrecy, meeting behind closed doors and, notably, failing to disclose any basis for its decision," a court cannot conclude that the challenged conduct will not recur. *Harrell*, 608 F.3d at 1267. Regardless of whether Florida law "permits" the Village to decide such matters at an executive session, *see* Resp. Br. at 11 n.2, the Village is surely not *compelled* to conceal those deliberations from the public and this Court. The price of deciding to do so is that the Village has not carried its burden to show unambiguous termination, *see Walker*, 901 F.3d at 1271 (case not moot where "the City has been unnecessarily secretive," including by asserting attorney-client privilege in discovery over information related to its decision-making process). Indeed, the Village's assertion that it deliberated at all rests entirely on a conclusory, legalistic, and self-serving statement in the Manager's declaration that he "engaged in substantial deliberation."

Williamson Decl. ¶ 9. Put simply, the Village asks this Court to take its word for it. This does not suffice to demonstrate that substantial deliberation produced a permanent change. *See Harrell*, 608 F.3d at 1267; *cf. State Farm Mut. Auto. Ins. Co. & State Farm Fire & Cas. Co. v. B&A Diagnostic, Inc.*, 145 F. Supp. 3d 1154, 1158 (S.D. Fla. 2015) (noting, in summary judgment context, that "[c]onclusory declarations lack any probative value and are insufficient as a matter of law"); *Rodda v. Univ. of Miami*, 542 F. Supp. 3d 1289, 1295 (S.D. Fla. 2021) (same).

Further, the Village *still* has not provided any reason for its rescission of the Gag Policy that is "independent of this litigation," *Flanigan's*, 868 F.3d at 1257. While the Village claims that the Manager "previously reiterated the Village's intent to uphold the First Amendment rights of staff, residents, and press," Resp. Br. at 12, the only time he did so was in an email to staff that explicitly attributed the Gag Policy's suspension not to its unconstitutionality but to a desire "[t]o avoid unnecessary legal expenses," Winton Decl., Ex. 10. The Manager's declaration, for its part, is entirely silent on his reasons for withdrawing the policy, *see* Willamson Decl. ¶¶ 8–9. So too is the October 8 Memo rescinding the policy, Winton Decl., Ex. 17, and the Village's non-binding Resolution, ECF No. 36-5. The absence of an alternative explanation for the rescission strongly suggests that it was done merely to avoid this Court's jurisdiction. *See Roberts*, 2024 WL 1830713, at *5 (finding injunctive relief not mooted where "there is no evidence" to explain why defendant suddenly changed course "in the first place").

Finally, Plaintiff has also shown that the Village has failed to "commit[] to [a] new policy," *Flanigan's*, 868 F.3d at 1257, or in this case failed to commit to a non-policy. The Village's brief only confirms, as Plaintiffs' opening brief emphasized, that the Resolution's expression of a vague "intent to not have a binding policy" has no clear legal effect. *See* ECF No. 39-5. The Manager's

7

declaration is likewise flimsy at best, given that it provides no detail about his reasons for rescinding the policy or the steps he took to evaluate the issue. Meanwhile, Plaintiff has alleged and substantiated that "[m]any source relationships remain damaged by the Gag Policy today." Winton Decl. ¶ 53; *see also* Pacenti Decl. ¶ 28. The Village may dispute the accuracy of that assertion, *see* Resp. Br. at 12, but it has provided no evidence for that view. Absent discovery on the issue, the Court cannot determine whether the Manager is still enforcing a policy or practice functionally equivalent to the Gag Policy—that is, whether employees remain chilled because they too draw the obvious inference that the rescission is a temporary litigation tactic.

For much the same reasons, dismissing Plaintiff's claims for declaratory and injunctive relief now will conserve no resources and provide no efficiencies. The parties agree that discovery must proceed on the claim for damages, which will entail deposing the same decisionmakers and producing the same documentary evidence about "the process for adopting" and rescinding the Gag Policy that would bear on the mootness (or not) of Plaintiff's prayers for prospective relief. *Walker*, 901 F.3d at 1271 (relying on government defendant's response to discovery requests to evaluate mootness).

In other words, while Plaintiff has already shown a reasonable belief that the Gag Policy's termination was not unambiguous on the existing record, all roads lead to the same result: Because the parties agree that this action cannot be resolved in its entirety without the benefit of discovery, this Court should set a scheduling conference so that the case may proceed.

## CONCLUSION

For the reasons set forth above and in Plaintiff's opening brief, this Court has jurisdiction to provide Plaintiff with effective relief, including injunctive and declaratory relief. Because

8

Defendant concedes that this action cannot be resolved prior to discovery, Plaintiff respectfully requests that the Court set a scheduling conference so that the case may proceed to discovery.

Dated: December 19, 2025                    Respectfully submitted,

/s/*Rachel E. Fugate*
Rachel E. Fugate
Florida Bar No. 144029
rfugate@shullmanfugate.com
SHULLMAN FUGATE PLLC
100 South Ashley Drive, Suite 600
Tampa, FL 33602
(813) 935-5098

Grayson Clary*
gclary@rcfp.org
Renee M. Griffin*
rgriffin@rcfp.org
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
(202) 795-9300
*Admitted *pro hac vice*

*Counsel for Plaintiff Miami Fourth Estate, Inc.*